UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE GONZALEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>  Defendant. | No. 1:15-CV-03106-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 21. Attorney D. James Tree represents Jose Gonzalez (Plaintiff); Special Assistant United States Attorney Daniel P. Talbert represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on December 27, 2010, alleging disability since March 15, 2002, due to three broken vertebra in his neck, arthritis, displaced discs in his back, damaged tendons on the right arm, depression, anxiety, and panic disorder. Tr. 196-197, 231, 269. The applications were denied initially and upon reconsideration. Tr. 115-117, 124-125.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on January 14, 2013, at which Plaintiff appeared with a non-attorney representative and testified. Tr. 49-88. In addition to Plaintiff, witness, Ana Julieta Gonzalez Lozano, and vocational expert, Trevor Duncan, also testified, and John Hayner was Plaintiff's interpreter. *Id*. The ALJ issued an unfavorable decision on March 29, 2013. Tr. 32-44. The Appeals Council denied review on April 24, 2015. Tr. 1-6. The ALJ's March 29, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 26, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 37 years old at the alleged date of onset. Tr. 196. Plaintiff's last grade completed with the sixth, and it was completed in Mexico. Tr. 232. Plaintiff's work history included agricultural labor. Tr. 232. Plaintiff reported he stopped working on March 15, 2002, because of his condition. Tr. 231.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations.  20 C.F.R. § 404.1520(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 29, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity from Mach 15, 2002, the alleged date of onset, through September 30, 2007, the last date Plaintiff had insured status for DIB. Tr. 34.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar, left shoulder, and cervical sprains in 1999; degenerative disc disease; and various mental disorders. Tr. 34.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 34-36.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> He can occasionally climb ramps and stairs. He can never climb ladders, ropes or scaffolds. His reaching is unlimited with the right upper extremity but limited to frequent reaching with the left upper extremity. He can frequently stoop, kneel, crouch, and crawl. He must avoid working at unprotected heights. He can perform work that is limited to simple tasks with simple work related decisions and only occasional and superficial interaction with the public.

Tr. 36. The ALJ identified Plaintiff's past relevant work as "farmworker, fruit" and found that Plaintiff was not able to perform this past relevant work. Tr. 42-43.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, hand packager, and mail clerk. Tr. 43. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 15, 2002, the alleged date of onset, through September 30, 2007, the date Plaintiff was last insured. Tr. 44.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's

decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to accord proper weight to the medical source opinions in the record; (2) failing to consider the determination of another government agency, (3) failing to consider the testimony of a lay witness; and (4) failing to properly credit Plaintiff's testimony about the severity of his symptoms.

## DISCUSSION

**A.    Medical Source Opinions**

Plaintiff challenges the weight the ALJ provided to the opinions of Andrew D. Whitmont, Ph.D., Ronald G. Early, Ph.D., M.D., Flint Orr, M.D., David Whitney, M.D., Leslie Postovoit, Ph.D., and CeCilia Cooper, Ph.D. ECF No. 15 at 17-22.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the

ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id*. at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

1.  **Andrew D. Whitmont, Ph.D.**

Dr. Whitmont completed a report on February 2, 2004, in which he diagnosed Plaintiff with a pain disorder associated with psychological factors and a general medical condition, major depression, and panic disorder with agoraphobia resolved. Tr. 278. Dr. Whitmont stated that Plaintiff's depression and anxiety were resolved and that no further treatment was planned. *Id*. "He should be sent to a closing IME or pensioned because his Category III pain disorder is permanent and prevents him from being able to [return to work]." *Id*.

The ALJ gave Dr. Whitmont's opinion "very little, if any, weight," because the opinion was based heavily on Plaintiff's self-reports, it was inconsistent with subsequent objective medical evidence, and it was inconsistent with Plaintiff's broad range of activities. Tr. 41.

The ALJ's first reason for rejecting Dr. Whitmont's opinion, that it was based on Plaintiff's self-reports, does not meet the specific and legitimate standard. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must provide the basis

for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ simply concluded that Dr. Whitmont's opinion was based on Plaintiff's self-reports without providing any basis for the determination. Tr. 41. Therefore, this reason is not legally sufficient to support the ALJ's rejection of Dr. Whitmont's opinion.

The ALJ's second and third reasons for rejecting Dr. Whitmont's opinion, that it was inconsistent with the subsequent objective medical evidence and the claimant's broad range of activities, is not a legally sufficient reason. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1196; *see also Lester*, 81 F.3d at 831 (The ALJ may give weight to consulting opinions "only insofar as they are supported by evidence in the case record."). In his decision, the ALJ summarized the medical evidence and Dr. Whitmont's opinion, but failed to state how Dr. Whitmont's opinion was inconsistent with the medical evidence or his reported activities. *See Embrey*, 849 F.2d at 421-422 (the ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct"). Therefore, the ALJ failed to meet the specific and legitimate standard in her rejection of Dr. Whitmont's opinion.

2. **Ronald G. Early, Ph.D., M.D.**

On April 3, 2006, Dr. Early evaluated Plaintiff and reviewed 750 pages of medical evidence. Tr. 317-324. Dr. Early diagnosed Plaintiff with major depressive disorder, pain disorder associated with psychological factors and general medical condition, and anxiety disorder. Tr. 323. Dr. Early gave the following opinion:

> [V]ocational services are not indicated for this gentleman. He has essentially been unable to work on a consistent meaningful basis since the industrial injury of August 23, 1999. He has a sixth grade education

in Mexico which is not the equivalent of a sixth grade education in the United States. He is functionally illiterate in the English language. He has no transferable job skills other than for physical labor which he cannot do. Additional efforts to return this gentleman to full time meaningful and gainful employment on a sustained basis will fail and will simply be more frustrating for individuals attempting to assist Mr. Gonzalez in doing so. It would also add additional stress for Mr. Gonzalez and will likely result in a worsening of his mental health conditions.

Tr. 324. Dr. Early continued, "Mr. Gonzalez is totally and permanently disabled as a result of combined physical injury, mental health diagnoses and psychosocial factors." *Id.*

The ALJ gave Dr. Early's opinion "very little, if any, weight" because it was based heavily on Plaintiff's self-reports, it was inconsistent with the subsequent objective medical evidence, and it was inconsistent with Plaintiff's broad range of activities. Tr. 41-42. These are the same reasons the ALJ rejected Dr. Whitmont's opinions. Again the ALJ failed to provide a basis for why he found Dr. Early's opinion to be based on Plaintiff's self-reports and he failed to address how Dr. Early's opinion was inconsistent with Plaintiff's medical records and reported activities. As discussed above, these reasons fail to meet the specific and legitimate standard. Therefore, the ALJ's treatment of Dr. Early's opinion was in error.

3. **Flint Orr, M.D.**

On May 24, 2011, Dr. Orr wrote a letter stating that he had been Plaintiff's primary care physician since 2006 and Plaintiff "continued to need medications for the chronic symptoms from the injury and has not been able to return to work. Therefore, I consider him chronically disabled." Tr. 411. On August 15, 2012, Dr. Orr wrote a letter stating the same. Tr. 410.

The ALJ did not discuss Dr. Orr's letters in her decision. Tr. 32-44. The ALJ is to consider all medical source opinions in the record, and if the residual

functional capacity assessment differs from a medical source opinion, the ALJ must explain why the opinion was not adopted. S.S.R. 96-8p.[1] Defendant asserts that because Dr. Postovoit wrote that Dr. Orr admitted he did not know much about Plaintiff's ability to work, Dr. Orr's letters were not probative evidence and did not need to be discussed. ECF No. 21 at 12. The record contains Dr. Postovoit's summary of her conversation with Dr. Orr on October 1, 2011. Tr. 388. Dr. Postovoit stated Dr. Orr was less familiar with Plaintiff's medical history overall, he only saw Plaintiff for brief medical renewal appointments about twice a year, he did not recall that Plaintiff appeared somatically preoccupied or in significant pain, and he had not asked Plaintiff if he any possible conversion disorder symptoms. *Id*. Dr. Postovoit wrote that Dr. Orr could offer nothing regarding how Plaintiff's shoulder and neck pain adversely affect his daily functioning. *Id*.

While Dr. Postovoit's memorialization of her phone call to Dr. Orr may support a determination that Dr. Orr's letters are entitled to limited weight, the ALJ failed to weigh Dr. Orr's letters at all. The ALJ should have discussed the treating physician's letters in his determination. The failure to do so was in error.

**4.    David Whitney, M.D.**

Dr. Whitney examined Plaintiff on June 16, 2004, at the request for the Department of Labor and Industries. Tr. 280-291. Dr. Whitney reviewed Plaintiff's records from September 1999 to the date of the evaluation. Tr. 281-283.

---

[1]Although they do not carry the force of law, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1) and (2). Such rulings "reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (citations and internal quotation marks omitted).

He diagnosed Plaintiff with a cervical sprain, lumbosacral sprain, and a left shoulder sprain. Tr. 287. Dr. Whitney opined that Plaintiff could seldom lift and carry 21-25 pounds, occasionally lift and carry 11-20 pounds, frequently lift and carry 6-10 pounds, and continuously lift and carry up to 5 pounds. Tr. 291. He further opined that Plaintiff was limited to seldom kneeling crawling, climbing, and reaching above the shoulder and occasionally bending and squatting. *Id*.

The ALJ gave Dr. Whitney's opinion "some weight, however, I considered and gave weight to additional medical evidence after 2004 in formulating the residual functional capacity." Tr. 41. Here, the ALJ failed to give any specific reason as to why she limited to the weight given to Dr. Whitney's opinion. At a minimum, the ALJ must provide specific and legitimate reasons for rejecting an examining physician's opinion. *Lester*, 81 F.2d at 830-831. Therefore, the ALJ's failure to provide a single reason why he gave limited weight to Dr. Whitney's opinion is in error.

### 5.    Leslie Postovit, Ph.D.

On November 21, 2011, Dr. Postovit reviewed the records available in Plaintiff's file and opined that for the time period of March 15, 2002, to March 31, 2006, Plaintiff's work history had always been with simple labor, he had a sixth grade education with very limited English, Plaintiff's somatic concerns would preclude the ability to focus on work-related tasks reliably, Plaintiff would not manage a job with much need for public interaction, and Plaintiff would require work that would be very predictable and with very steady production demands, which would not require much independent decision making on his part. Tr. 107-109. Finally, Dr. Postovit stated that Plaintiff was diagnosed with major depressive disorder, conversion disorder, and pain disorder with "somatic preoccupation being too severe for [Plaintiff] to return to work activities." Tr. 109.

Then, Dr. Postovit opined that from April 1, 2006, to the date of her opinion, November 21, 2011, Plaintiff's limited education and English abilities precluded

him from working beyond simple routine tasks; he would be too slow to tackle new complex tasks, but could manage simple routine tasks and some hands-on complex tasks that he had been able to learn slowly at his pace (such as reading well enough to pass driving test and reading information regarding store sales); he would be poorly suited for work beyond intermittent and casual contact with the public due to his concrete thinking and limited English skills; and he would need work that was predictable in task expectation and work flow, and did not require him to make many independent decisions. Tr. 110-111.

The ALJ gave Dr. Postovoit's opinion "some weight." Tr. 41. While Dr. Postovit was only a non-examining psychologist, the ALJ failed to discuss why the he did not adopt Dr. Postovoit's opinion that Plaintiff was unable to work from his alleged date of onset through March 31, 2006. Therefore, the ALJ errored in her treatment of Dr. Postovoit's opinion. *See* S.S.R. 96-8p.

### 6. CeCilia Cooper, Ph.D.

On November 10, 2011, Dr. Cooper reviewed Plaintiff's medical records and conducted an evaluation. Tr. 380-387. Dr. Cooper diagnosed Plaintiff with pain disorder with both psychological factors and a general medical condition, adjustment disorder with depressed mood, and some passive aggressive traits. Tr. 385. Dr. Cooper provided the following opinion:

> Based on the results of this evaluation it is felt that Mr. [Gonzalez] is able to understand, remember and carry out instructions for tasks involving two or three closely related steps. He would have difficulty with more complex instructions. He would do tasks requiring much physical labor, slowly. He would have problems maintaining attention and concentration for extended periods of time because of subjective feelings of pain and because of depression. He would have problems with change because his thinking is concrete. He would do best in situations in which he could practice new behaviors related to changes several times before the changes are implemented. Visual aids and demonstrations would be helpful. Supervisors would do well to not give him a new task to do until he has completed the one he has. Having

him repeat instructions in his own words would also be of benefit. Mr. [Gonzalez] would usually respond appropriately to normal hazards. He would not require close supervision once he has a comfortable routine to follow. He would respond well to having his efforts to succeed noted.

Tr. 386.

Additionally, Dr. Cooper noted that Plaintiff "might require help keeping his surroundings in good order." *Id*. The ALJ did not discuss Dr. Cooper's opinion in her decision. Tr. 32-44.

Defendant asserts that since the opinion was after Plaintiff's date last insured, it was not probative evidence and did not need to be discussed. ECF No. 22 at 12-13. Medical evidence generated after the expiration of a claimant's insured status may be relevant in determining a claimant's pre-expiration condition; such evidence may not be disregarded solely because it was generated retrospectively. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988). Dr. Cooper reviewed records from prior to Plaintiff's date last insured as part of forming her opinion. Tr. 380. The ALJ is to consider all medical source opinions in the record, and if the residual functional capacity assessment differs from a medical source opinion, the ALJ must explain why the opinion was not adopted. S.S.R. 96-8p. Therefore, the ALJ's failure to address Dr. Cooper's opinion is in error.

Considering the numerous errors the ALJ committed in his treatment of medical source opinions throughout the record, the case is remanded for additional proceedings and the ALJ is instructed to readdress all medical source opinions in the file, weighing and discussing each one.

**B.    Determination of Another Government Agency**

The record shows that Plaintiff was injured on the job in 1999 and contains a Proposed Decision and Order signed by Daniel W. Johnson, Industrial Appeals Judge for the Board of Industrial Insurance Appeals for the State of Washington finding Plaintiff totally and permanently disabled as of March 7, 2006. Tr. 211-

223.

Plaintiff challenges the ALJ's failure to discuss this decision, which found that Plaintiff was permanently and totally disabled as of March 7, 2006. ECF NO. 15 at 22.

A determination of disability by another government agency is not binding on the Social Security Administration, but it is evidence under agency regulations. 20 C.F.R. §§ 404.1504, 404.1512(b)(v); *See Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985) ("The state finding may be introduced into evidence before the Secretary, but she may attribute as much or as little weight to it as she deems appropriate.").

Considering the case is being remanded and the ALJ has been instructed to readdress the opinions of Dr. Early and Dr. Whitney, who performed evaluations for the Department of Labor and Industries, the ALJ is also instructed to address the Department of Labor and Industries' decision upon remand.

**C.    Lay Witness Testimony**

Plaintiff challenges the ALJ's failure to discuss his wife's testimony. ECF No. 15 at 22-23.

Lay witness testimony cannot establish the existence of medically determinable impairments. *See* 20 C.F.R. § 404.1513. However, it is competent evidence as to a claimant's symptoms or how an impairment affects the claimant's ability to work, and the ALJ must take it into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Ninth Circuit has held that competent lay witness testimony "cannot be disregarded without comment," *Nguyen*, 100 F.3d at 1467, and that in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill*, 12 F.3d at 919.

Considering this case is already being remanded for the ALJ to readdress the medical source opinions in the record, the ALJ is further instructed to consider and

discuss Plaintiff's wife's testimony upon remand.

**D.   Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 15 at 24-25.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

Considering the case is being remanded, the ALJ is further instructed to readdress Plaintiff's credibility on remand.

# REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211

F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to consider and weigh the medical source statements in the record, the disability determination made by the Department of Labor and Industry, and Plaintiff's wife's testimony. Additionally, the ALJ is instructed to readdress Plaintiff's credibility finding. The ALJ will also need to supplement the record of any outstanding medical evidence, and elicit testimony at the hearing from both a medical expert and a psychological expert.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED May 18, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE